FILED
Apr 26 2016, 11:05 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 21S04-1510-CR-604

WILLIAM BOWMAN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Fayette County Circuit Court, No. 21C01-1310-FA-768
The Honorable Beth A. Butsch, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 21A04-1404-CR-180

**April 26, 2016**

**Massa, Justice.**

William Bowman was convicted after a jury trial of Class A Felony Dealing in a Narcotic Drug within 1,000 Feet of School Property and of being a Habitual Substance Offender. Bowman raises five contentions on appeal: (1) he was a victim of "sentencing factor manipulation" at the hands of the Connersville Police Department and its confidential informant, Ciji Angel; (2) the jury verdict may not have been unanimous, in that two baggies were introduced into evidence to

support a single charge of dealing in heroin; (3) certain letters he wrote to potential witnesses from prison should not have been admitted; (4) there was insufficient evidence to support the conviction; and (5) his sentence of forty years for felony dealing was inappropriate. We find none of Bowman's contentions merit reversal, and thus affirm.

**Facts and Procedural History**

Angel became a confidential informant in 2012, under the supervision of Detective Phillips, in exchange for police not pursuing criminal action against her for possession of a controlled substance. One afternoon in October, Angel called Detective Phillips to report she had just purchased heroin from Bowman at his apartment. As can be typical of confidential informants in narcotics operations, Angel has an extensive history of substance abuse, and she had actually taken at least two shots of heroin the day she called Phillips. She also admitted to having a "cap," or about twenty dollars' worth, of heroin on her dresser that evening. Although she denied having any drugs on her person that day other than those purchased from Bowman, she conceded she regularly did, often keeping them in her bra.

What may be less typical, however, is a familial and personal relationship between the confidential informant and the subject of the investigation: at that time, Bowman was romantically involved with Crystal Powell, the ex-wife of Angel's half-brother. And Bowman was living in the same apartment as Angel when the relevant drug buys transpired, along with, among others, Angel's three-year-old nephew, J.P. Angel also conceded that she actively "dislike[d]" Bowman for being verbally and physically abusive toward Crystal and J.P. Tr. at 76, 88–89. Indeed, Angel volunteered Bowman as a potential target of a controlled buy, although she declined the same for other suspects, saying she considered them her friends.

When Angel called that day, Phillips informed her that because there was no police involvement in the first buy, it could not be used against Bowman, so they would have to arrange for a second buy. Phillips and Angel met that evening in the Frazee Elementary School parking

2

lot, which was across the street—approximately 530 feet away—from Bowman and Angel's apartment building. Angel turned over to Phillips the heroin she had already obtained, but had not yet paid for, and Phillips gave Angel $160 in unmarked bills,[1] enough to pay for the first purchase and make a second buy. Phillips searched Angel's purse and pockets for contraband, but he did not pat her down or thoroughly search her person, since no female officers were on site to conduct such a search. Phillips also placed an audio/video recording device in Angel's purse.

Angel left Phillips's vehicle and returned about half an hour later with a similar bag containing a "tan rock like substance." Tr. at 160. The first baggie Angel provided tested positive for heroin; the second baggie was not tested at all. Phillips did, however, specifically identify the substance in the second baggie as heroin based on its appearance, noting that he'd "seen enough of it" to make that determination. Tr. at 157. Phillips removed the recording device, but it did not record any information regarding a drug sale.

Nearly a year later, Bowman was arrested and charged with one count of Dealing in a Narcotic Drug within 1,000 Feet of School Property. Apart from events described above, at trial the State also introduced redacted letters, over Bowman's objection, which Bowman had written to two people from prison whom he believed were in the apartment at the time of Bowman's second sale to Angel.

The jury convicted Bowman of the dealing charge, and determined Bowman to be a habitual substance offender, based upon evidence of two prior drug convictions. The trial court

---

[1] Phillips did not make photocopies or otherwise establish a method to track the bills he gave Angel; he testified that he believed marking or recording the bills was unnecessary, because since he did not plan to execute an arrest warrant that night, the money was "not coming back." Tr. at 157.

sentenced Bowman to forty-five years in prison—forty for the Class A felony and five for the habitual offender conviction, to run consecutively.

Bowman appealed, raising five challenges, and our Court of Appeals reversed, finding one dispositive: there was insufficient evidence to support that the substance in the second baggie was heroin, because although circumstantial evidence has been found adequate to establish identity in other cases, those circumstances were not present with respect to Detective Phillips's testimony. Bowman v. State, 32 N.E.3d 812, 814 (Ind. Ct. App. 2015). We granted the State's petition for transfer, thereby vacating the opinion below. Bowman v. State, 39 N.E.3d 380 (Ind. 2015) (table); Ind. Appellate Rule 58(A). We find none of Bowman's claims of error warrant reversal.

**"Sentencing Factor Manipulation" Is Inapplicable to the Charges Against Bowman.**

As an initial matter, Bowman contests the very nature of the charge against him: Dealing in a Narcotic Drug within 1,000 Feet of School Property. The evidence conclusively established that the front door of Bowman's apartment building was 530 feet from Frazee Elementary School, which is sufficient to raise the dealing offense from a Class B felony to a Class A felony under the version of our Criminal Code in effect at the time.[2] Although he makes no explicit mention of Indiana Code section 35-48-4-16(b) (2008), Bowman appears to assert that the affirmative defense contained in that provision should apply, since the sale took place at night when no children were

---

[2] Ind. Code § 35-48-4-1(b) (2008) ("The offense is a Class A felony if: . . . (3) the person manufactured, delivered, or financed the delivery of the drug: . . . (B) in, on or within one thousand (1,000) feet of: (i) school property[.]"). It should be noted, however, that after the extensive revisions to our Criminal Code, effective July 1, 2014, the enhancement only applies to drug deals within 500 feet of school property, and only "if a person under eighteen (18) years of age was reasonably expected to be present." Ind. Code § 35-48-4-16 (2014).

present on school grounds. Although he fails to satisfy either requirement of Section 16(b),[3] Bowman nevertheless contends that neither his residence near Frazee Elementary School nor the presence of three-year-old J.P. during the sale should be held against him, as both of these factors used to enhance the charge to a Class A felony were within the control of police, specifically Angel in her role as a confidential informant. Bowman thus urges this Court to adopt the principle of "sentencing factor manipulation," which has been recognized in certain federal courts, and which precludes sentence enhancement where "law enforcement officials, for the purpose of increasing the defendant's sentence, engaged in conduct that was so outrageous or extraordinary as to violate the defendant's right to due process of law." Appellant's Br. at 38–39 (citing, e.g., United States v. Ciszkowski, 492 F.3d 1264, 1271 (11th Cir. 2007); United States v. Montoya, 62 F.3d 1, 4 (1st Cir. 1995)).

We agree with the State that we need not determine today whether or not to adopt the principle of sentencing factor manipulation in Indiana because Bowman has not met his *own* proposed standard: outrageous police conduct. At no point did Bowman contradict that he in fact lives within 1,000 feet of school property, or that there was indeed a child present during Angel's second buy. Moreover, Bowman's decision to reside near a school was completely voluntary—as Detective Phillips put it, the fact that Phillips chose to meet Angel in the Frazee parking lot prior to the buy "doesn't change where Mr. Bowman lives." Tr. at 146. And Bowman's contention that Angel manipulated three-year-old J.P. into being on the scene during the second buy is also not supported by the record, which established both Angel and J.P as full-time residents of the apartment. Even accepting that neither of these drug buys were exemplary, Bowman has not shown that any of the irregularities in the prosecution of this case were relevant to his proximity

---

[3] See Ind. Code § 35-48-4-16(b) ("It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that: (1) a person was briefly in, on, or within one thousand (1,000) feet of school property . . . and (2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of school property . . . at the time of the offense.").

to Frazee Elementary during the sale. Accordingly, Bowman has failed to carry his burden in raising any affirmative defense to the enhancement; the Class A felony charge was therefore appropriate.

**Bowman Has Waived His Claim Regarding Jury Unanimity.**

Bowman also asserts the jury verdict cannot be sustained because the State established facts for two drug deals yet only charged him with one, in the absence of a clear instruction from the court that the jury had to unanimously find Bowman guilty of one and the same drug deal. We recognized this precise issue in Baker v. State, holding that if the State presents evidence of more criminal acts than are charged, "the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged." 948 N.E.2d 1169, 1177 (Ind. 2011). But, as the State points out, we also recognized this is an instructional issue, and thus subject to waiver by the defendant for failure to object or tender a relevant jury instruction. Id. at 1178.

Bowman concedes he did neither of these things, but argues that nevertheless waiver is inappropriate because (1) he did tender a jury instruction regarding the definition of a controlled buy, and (2) he moved to dismiss the charges after Phillips testified that the first buy had insufficient police safeguards to qualify as "controlled," since that testimony fundamentally changed the nature of the proceedings. We find neither of these actions adequately preserved the issue of jury unanimity on appeal.

Indiana Trial Rule 51(C) states, in relevant part:

> At the close of the evidence and before argument each party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. No party may claim as error the giving of an instruction unless he

6

> objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

We have construed this requirement rather strictly, finding that its "purpose is not to create a procedural trap but to enhance trial fairness and to enable effective appellate review." Scisney v. State, 701 N.E.2d 847, 848 (Ind. 1998). Thus, at a minimum, "appellate review of a claim of error in the giving of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection," though tendering a proposed alternative instruction is recommended. Id. at 849. Here, Bowman's proposed instruction regarding a controlled buy did not contain any information with respect to jury unanimity,[4] nor did Bowman object when the state explained that it was indeed putting both buys into evidence to prove a single charge, arguably relying on the possible *lack* of jury unanimity.[5] A motion to dismiss based on inadequate evidence, as Bowman did here, is simply not akin to objecting to the jury's potential lack of unanimity in interpreting that evidence. Bowman has thus failed to preserve this objection for appeal. Moreover, Bowman also failed to raise the issue of fundamental error in his initial appellate brief; we therefore find his claim of error with respect to the lack of an instruction on jury unanimity entirely waived. See Curtis v. State, 948 N.E.2d 1143, 1148 (Ind.

---

[4] Compare App. at 85 ("A controlled buy consists of searching a person who is to act as the buyer, removing all personal effects, giving him the money with which to make the purchase, and sending him into the building or structure in question. Upon his return he is again searched for contraband. Except for what actually transpires within the building or structure, the entire transaction takes place under the direct supervision of the police. They ascertain that the buyer goes directly into the building and returns directly, and they closely watch all entrances to the building or structure throughout the transaction."), with 2 Indiana Pattern Jury Instruction 13.3100 (2015) ("The State has presented evidence that the Defendant may have committed more than one act of (*name crime*) against (*name alleged victim*) between (*insert date*) and (*insert date*). Before you may find the Defendant guilty, you must all unanimously find and agree that the State proved beyond a reasonable doubt the Defendant committed the same specific, single act of (*name crime*) against (*name alleged victim*) between (*insert date*) and (*insert date*).").

[5] See Tr. at 234 ("[PROSECUTOR:] The jury can find a deal with one, both or you know one the other or both and that would be allowed.").

7

2011) ("[P]arties may not raise an issue, such as fundamental error, for the first time in a reply brief.").

### The Trial Court Did Not Err in Admitting the Redacted Letters Under Indiana Evidence Rule 404(B)(2).

Bowman also argues the trial court erred in admitting seven redacted letters evidencing his attempts to secure beneficial testimony from two witnesses, contending these letters were irrelevant and unduly prejudicial. "A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb the court's rulings only where the petitioner has shown an abuse of that discretion." Isom v. State, 31 N.E.3d 469, 482 (Ind. 2015). An abuse of discretion occurs only "if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." Carpenter v. State, 18 N.E.3d 998, 1001 (Ind. 2014). In examining whether evidence was appropriately admitted, "[w]e consider only evidence that is either favorable to the ruling or unrefuted and favorable to the defendant." Pierce v. State, 29 N.E.3d 1258, 1264 (Ind. 2015).

The trial court found that these letters were admissible under Indiana Evidence Rule 404(B)(2), which permits the introduction of character evidence for purposes such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In particular, the court found that these letters constituted probative evidence of a guilty mind, in that they constituted attempts by the defendant to "coerce, influence, intimidate or threaten witnesses with regard to their testimony." App. at 75.

The trial court properly conveyed the rule from this Court: "There is a long-standing line of cases holding that 'threats against potential witnesses as attempts to conceal or suppress evidence are admissible as bearing upon knowledge of guilt.'" Bassett v. State, 895 N.E.2d 1201, 1211 (Ind. 2008) (quoting West v. State, 755 N.E.2d 173, 182 (Ind. 2001)). Whether the text of these letters falls within this rule, however, is more subtle. Bowman contends that these letters

8

were not coercive because they merely implored these two potential witnesses to tell the truth. But a fair reading of these letters indicates Bowman sought far more than simple honesty from these witnesses. Construed in a manner favorable to admission, the letters state as follows:

> State's Exhibits 5, 6 and 9: Bowman recounts his recollection of events, and then demands that the witness provide specific testimony consistent with his recollections;
>
> State's Exhibit 7: Bowman makes similar requests regarding testimony, and adds "I hope none of my blood lands on either of y'all's hands";
>
> State's Exhibit 8: Bowman demands that the witness corroborate his story, notes that if he is convicted it was "the probable possibility that the Court could charge you for 'conspiracy to deal,'" adds that "debts will be doubled + tripled," and requests money be placed in his account in prison;
>
> State's Exhibit 10: Bowman requests that the witness disseminate his letter to other potential witnesses, which contains a detailed account of everything he believed would undermine Angel's credibility; and
>
> State's Exhibit 11: Bowman further tries to direct the witness's testimony, including adding specific statements in quotes that the witness could recount, noting that such a statement would not be "far fetched."

Moreover, both the witnesses who received these letters testified at the hearing on Bowman's motion in limine that many of the statements Bowman wanted them to testify about were patently false. Indeed, one of the witnesses was not even in the apartment during the time of the second buy. Although some of these letters may be cumulative, the trial court was within its discretion in determining that they constituted attempts by Bowman to unduly influence witnesses into providing false testimony favorable to his defense, and were thus admissible under Rule 404(B)(2).

**There Was Sufficient Evidence to Support the Class A Felony Dealing Conviction.**

We now reach the crux of the Court of Appeals opinion below, and the focus of Bowman's argument: was there sufficient evidence to support the conviction in the absence of chemical testing on the second baggie that indicated it contained heroin? Bowman, 32 N.E.3d at 813; Appellant's Br. at 19–21. We believe that there was.

When conducting a sufficiency of the evidence review after a jury verdict, the appellate posture is markedly deferential to the outcome below: we will neither reweigh the evidence nor re-examine witness credibility, and we "must consider only the probative evidence and reasonable inferences *supporting* the verdict." Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007) (emphasis in original). Indeed, it is our duty to "affirm the conviction unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" Id. at 146–47 (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)).

Here, construing the evidence in the manner which supports the verdict, Angel testified that she purchased heroin from Bowman twice, one of the baggies she provided to Detective Phillips tested positive for heroin, the location of both sales was within 1,000 of a school, a child was present for both sales, and Bowman attempted to coerce witnesses into testifying in his favor. Taken as a whole, this is adequate to support the Class A felony conviction. Bowman has cogently raised an alarming specter: that Angel framed him for this crime and that the procedural irregularities accompanying the controlled buy allowed it to happen. But Bowman raised precisely that same specter before the jury, which was in the best position to judge Angel's credibility as a

witness.[6]  Having heard her testimony, the jury found Angel's version of events reliable and voted to convict.  We see no reason to upset that determination on appeal.

### The Trial Court Was Within Its Discretion in Ordering Bowman to Serve Forty Years for His Class A Felony.

Finally, Bowman contends his forty-year sentence for Class A felony dealing was inappropriate in light of the nature of the offense and the character of the offender, and thus should be revised pursuant to Indiana Appellate Rule 7(B).  Our posture on appeal is again deferential: "A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review."  Rice v. State, 6 N.E.3d 940, 946 (Ind. 2014).

"[R]egarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed."  Anglemyer v. State, 868 N.E.2d 482, 494 (Ind.), decision clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).  Here, the advisory sentence for Bowman's crime is thirty years, with a statutory range of twenty to fifty years.  See Ind. Code § 35-50-2-4 (2008).  Therefore, since the trial court imposed a sentence above the presumptive sentence, it was required to "set forth its reasoning" supporting the deviation.  Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).  And the trial court did so here, finding a total of seven aggravating factors (including twenty previous criminal convictions), with no corresponding mitigating factors.  The court also took Bowman's character into consideration, finding that he "showed no remorse for his crimes" and that many of his previous convictions were for crimes of violence.  App. at 96.  Finding these conclusions supported by the evidence, we decline to revise Bowman's sentence under Indiana Appellate Rule 7(B).

---

[6] We also reject Bowman's claim that Angel's testimony was subject to exclusion under the "incredible dubiosity" rule because there is no evidence her testimony was contradictory or coerced.  See Moore v. State, 27 N.E.3d 749, 758 (Ind. 2015).

## Conclusion

For the foregoing reasons, we affirm Bowman's conviction for Class A Felony Dealing in a Narcotic Drug within 1,000 Feet of School Property.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.