## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 27 2019, 9:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Weston Anakin Swanson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 27, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-1281 <br><br> Appeal from the <br> St. Joseph Superior Court <br><br> The Honorable <br> Julie P. Verheye, Magistrate <br><br> Trial Court Cause No. <br> 71D08-1807-CM-2714 |

**Kirsch, Judge.**

[1] Weston Anakin Swanson ("Swanson") appeals his conviction for criminal mischief[1] as a Class B misdemeanor, contending that the trial court abused its discretion when it denied the admission of evidence to prove Swanson acted in defense of another.

[2] We affirm.

## Facts and Procedural History

[3] Christopher Matsey, Sr. ("Matsey") and Jolene Harwood ("Harwood") are the biological parents of a son ("Son"). Pursuant to a court order, parenting-time exchanges of Son took place at the downtown public library in South Bend, Indiana. Prior to meeting with Harwood for a parenting exchange on May 4, 2018, Matsey had agreed to give her $300.00, over and above what he normally paid in child support, to pay for Son's school clothes and supplies. *Tr. Vol. 2* at 18. While driving to the meeting point, Matsey received a call from Harwood who said that her then-fiancé, Swanson, "might be there in the corner" and "just to be easy about it." *Id*. at 16.

[4] Matsey arrived at the library parking lot and saw that Harwood and Swanson were already there but in different vehicles. *Id*. at 16-17. Swanson's pick-up truck was parked about forty yards behind Harwood's car. *Id*. Matsey had seen Swanson with Harwood at prior custody exchanges; however, all other times

---

[1] *See* Ind. Code § 35-43-1-2(a).

Swanson and Harwood had been in the same vehicle. *Id.* at 16. Matsey exited his car, approached Harwood's car, and gave her the cash. *Id.* at 17-18. Meanwhile, Son stepped out of Harwood's car. Having seen the exchange of money, Swanson drove up behind Harwood's vehicle and got out of his truck. *Id.* at 18-19. The two men began shoving and yelling at each other.[2] *Id.* at 21-23, 43, 51. Matsey told Son to get into his car and walked over to the front passenger seat to "mak[e] sure [S]on [was] okay." *Id.* at 22-24. Swanson then approached the front of Matsey's car and "start[ed] belligerently banging" on the hood with his fists causing multiple dents. *Id.* at 24-25. Swanson stopped banging on the car only after "concerned citizens came over and let him know that the police were on their way." *Id.* at 26. Swanson returned to his truck and sped away, traveling over a barricade that was meant to stop traffic. *Id.* at 26, 27.

[5] Before the police arrived, bystanders made sure that Matsey was "all right." *Id.* at 28. Meanwhile, city workers drove after Swanson in an effort to get his license plate information. *Id.* at 27-28. Matsey and Harwood talked about the incident. Harwood told Matsey to relax, and she apologized to Matsey for the incident. *Id.* at 28. South Bend Police Officer Andrew Ream ("Officer Ream") arrived at the scene and found Matsey, Harwood, and a bystander who had witnessed the incident. *Id.* at 10. Officer Ream observed "several dents in the

---

[2] Matsey testified that the altercation stemmed from Swanson attempting to take the money from Harwood. *Tr. Vol. 2* at 20-23. Swanson testified that he intervened because Matsey exited his vehicle and aggressively threw the money at Harwood. *Id.* at 42.

hood" of Matsey's car. *Id*. Matsey and Harwood identified Swanson as the individual who had damaged Matsey's car. *Id*. at 10-11. Officer Ream noted that the dents "were approximately the size that would indicate that it was feasible that they came from punches." *Id*. at 10.

[6] On August 3, 2018, the State charged Swanson with battery and criminal mischief, each as a Class B misdemeanor. The trial court held a bifurcated bench trial; on February 7, 2019, the State presented the testimony of Officer Ream and Matsey, and on May 9, 2019, the defense presented Swanson's testimony. During the trial, Matsey testified that there have been domestic disputes between himself and Harwood in the past. *Id*. at 30. Swanson said he attended 80% of the parenting-time exchanges, saying that, "because of past history," Harwood wanted him to attend. *Id*. at 36, 42. When defense counsel asked Swanson why Harwood wanted him to be present at the parenting exchanges, Swanson responded that there had been a couple of incidents between Harwood and Matsey, and Harwood "has a restraining order placed against him so she never really feels safe." *Id*. at 28. The State objected, saying that the question required Swanson to speculate as to Harwood's "state of mind, her way of thinking." *Id*. The trial court sustained the objection. *Id*.

[7] Defense counsel then asked Swanson what type of incidents had taken place between Matsey and Harwood. *Id*. The State objected on the ground of relevancy, and the trial court sustained the objection on the basis that "incidents in the past between Ms. Harwood and Mr. Matsey aren't relevant or germane to the issues of what happened on this particular date in the library parking lot."

*Id.* at 39.  At the conclusion of the bench trial, the trial court found Swanson not guilty of battery but guilty of criminal mischief.  The trial court ordered Swanson to pay Matsey restitution in the amount of $1,571.25, for the repair of Matsey's car.[3]  Swanson now appeals.

# Discussion and Decision

[8] Although Swanson did not provide the applicable standard of review on appeal,[4] the essence of his argument is that the trial court abused its discretion when it excluded evidence offered by Swanson to prove that he acted in defense of another.  In other words, Swanson claims that the trial court should have allowed him to testify that his actions arose from his fear of Matsey and in defense of Harwood ("the Defense").  "'A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb the court's rulings only where the petitioner has shown an abuse of that discretion.'"  *Heckard v. State*, 118 N.E.3d 823, 827-28 (Ind. Ct. App. 2019) (quoting *Bowman v. State*, 51 N.E.3d 1174, 1180 (Ind. 2016)), *trans. denied*.  "An abuse of discretion occurs only if a ruling is clearly against the logic and effect of the facts and circumstances, and the error affects a party's substantial rights."  *Id.* at 828.  "'Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party.'"  *Id.*

---

[3] Swanson does not appeal the amount of the ordered restitution.

[4] Indiana Appellate Rule 46(A)(8)(b) in pertinent part provides:  "The argument must include for each issue a concise statement of the applicable standard of review."

(quoting *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015)). "To determine whether an error in the introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the [trier of fact]." *Id.* Our court does not reweigh the evidence on appeal; instead, we consider any conflicting evidence in favor of the trial court's ruling. *Wilson v. State*, 973 N.E.2d 1211, 1214 (Ind. Ct. App. 2012).

[9] We begin by noting that Swanson has waived review of the issue of whether the trial court erred when it excluded testimony concerning the Defense because he failed to make an offer of proof. "[A]n offer of proof is required to preserve an error in the exclusion of a witness's testimony." *Heckard*, 118 N.E.2d at 828. "If the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." *Id.* (citing Ind. Evidence Rule 103(a)(2)). "An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony, as well as the potential for prejudice if it is excluded." *Id.* Here, Swanson does not cite the specific language that was excluded. Likewise, Swanson made no offer of proof to the trial court. As such, Swanson has failed to preserve review of his claim that the trial court erred in excluding the Defense. *Id.* Waiver notwithstanding, we address Swanson's issue on the merits.

[10] Swanson contends that the trial court's exclusion of evidence that supported the Defense was an abuse of discretion. Here, even if he could show that the trial court abused its discretion, Swanson is not entitled to relief because such error is harmless. Swanson was charged with battery and criminal mischief. At the

close of the evidence, the trial judge found Swanson not guilty of battery but guilty of criminal mischief, explaining:

> [A]fter listening to the three witnesses that I've heard in the case, you know one of the things that I also can take into account as [ ] the finder of fact in the case is, you know, the witness[es]' demeanor and manner of conduct while testifying, and one of the things that came kind of through loud and clear to me was that Mr. Matsey certainly seems to be an angry individual. . . . And so insofar as . . . Count I, the battery is concerned, . . . I'm not persuaded beyond a reasonable doubt as to who is the aggressor . . . because everybody has acknowledged that there was some yelling going on back and forth between the two men. Each has claimed that the other was the aggressor in terms of initiating the pushes. I'm not convinced beyond a reasonable doubt based on . . . Mr. Matsey's testimony, like I say in light of his demeanor and conduct while he was testifying in the case.

> On the other hand, when it comes to the issue of the [criminal] mischief, I do have testimony from Mr. Matsey that says, and while like I say I'm not convinced beyond a reasonable doubt as to who is the aggressor here because obviously there was some bad thing or bad feelings going on, whatever the reason that day. And there was yelling and screaming going on. I do have the testimony from Officer Ream and his testimony was that there were six dents on the hood of the vehicle, he observed that.

> And I think, [the prosecutor] made some pretty reasonable points in his cross examination of Mr. Swanson if you really thought that your fiancé [sic] was in that much danger, why would you leave in the way that you did. I understand your comments, but I think he probably did decide to leave, but decided to get in a few licks before he left and did that courtesy of the vehicle that Mr. Matsey was driving. And so I am going to find him guilty on Count II, which is the criminal mischief.

*Tr. Vol. 2* at 62-63. Notwithstanding Swanson's claim that he was prevented from presenting evidence of Matsey's temperament, the trial court observed that Matsey "seem[ed] to be an angry individual." *Id*. at 62.

The trial court convicted Swanson of criminal mischief. *Id*. at 63. To prove that Swanson committed criminal mischief, the State had to establish that he "recklessly, knowingly, or intentionally damage[d] or deface[d]" Matsey's vehicle without Matsey's consent. Ind. Code § 35-43-1-2(a). The evidence showed that during the parenting exchange Swanson and Matsey engaged in a dispute, yelling at and shoving each other. *Tr. Vol. 2* at 21-23, 43, 51. While Matsey was checking on Son's well-being, Swanson approached the front of Matsey's parked car and "start[ed] belligerently banging" on the hood with his fists, causing multiple dents. *Id*. at 24-25. When bystanders told Swanson and Matsey that police were on their way, Swanson jumped into his truck and sped away, leaving Harwood at the scene. *Id*. at 26, 27. Officer Ream testified that Matsey and Harwood each reported that Swanson damaged Matsey's car. *Id*. at 28. Officer Ream observed the dents and testified that they "were approximately the size that would indicate that it was feasible that they came from punches." *Id*. at 10. We find sufficient evidence to support Swanson's conviction for criminal mischief, and Swanson has provided no theory to show how the Defense could have undermined that conviction.

Affirmed.

Baker, J., and Crone, J., concur.